**ENGLEHARDT v. UNITED STATES et al.**

Civ. A. No. 3276.

District Court, D. Maryland.

Jan. 18, 1947.

Jos. O. Kaiser and Kenney & Kaiser, all of Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., and James B. Murphy, Asst. U. S. Atty., both of Baltimore, Md., for Government.

G. C. A. Anderson and Carman, Anderson & Barnes, all of Baltimore, Md., for defendant Quillen.

CHESNUT, District Judge.

The above entitled suit is apparently the first in this court requiring consideration of the recent Act of Congress known as the Federal Tort Claims Act, Public Law 601, 79th Cong., c. 753, 2nd Session, being title IV, approved August 2, 1946, 28 U. S.C.A. § 921 et seq.

The plaintiff, a citizen of Maryland, is suing the United States of America, and Jane D. Quillen (a citizen of the State of Delaware) as joint tort-feasors for damages resulting from a collision on April 17, 1946, between a motor vehicle driven by an employe of the United States and an automobile driven by the defendant, Quillen, in which the plaintiff was a passenger, the accident occurring on the public highways in Ocean City, Maryland. Quillen, the individual defendant, moves for a dismissal of the suit against her on the ground that under the Federal Tort Claims Act an individual cannot be joined with the United States of America as a joint tort-feasor.

In support of the motion it is contended that a reading of the Act as a whole should lead to the conclusion that it was the intention of Congress to restrict suits against the United States to cases where the United States *alone* is sued as the only defendant, and therefore it is not permissible to include an individual defendant jointly with the United States as a joint tort-feasor. More specifically, reference is made to the provisions of the statute, § 410(a), which,

in conferring jurisdiction upon the district courts, expressly provide that the determination of the issues shall be by the court sitting *without a jury*. And reference is also made to section 422 with respect to limitation on the amount of attorneys' fees to be allowed out of the judgment, if any, rendered against the United States.

With respect to the requirement that the issue shall be decided by the court sitting without a jury, it is pointed out that as to an individual defendant joined with the United States as a joint tort-feasor, the former would be entitled under the 7th Amendment to the Federal Constitution to a jury trial, thus requiring in one case concurrent but separate determinations with respect to the liability of the United States by the judge without a jury, and as to individual defendant, by a jury, subject, of course, to prior instructions from the court. And with respect to the limitation on the amount of attorneys' fees (not over 20% of the amount recovered) it is said that this limitation would not be effective in regard to the judgment against the individual defendant while it is applicable to the judgment against the United States, with the resultant uncertainty if not impossibility of application with respect to the joint judgment. It is also urged that there would probably be difficulties in the administration of the Act with respect to the admission or rejection of the evidence where the case is tried at one time with the judge determining the liability of the United States, and the jury as to liability of the individual.

In this particular case it is to be noted that the objection to the inclusion of the individual defendant as a joint tort-feasor is not made by the United States, but on the contrary the latter by petition expressly opposes the dismissal of the suit as to the individual defendant. And it is obviously to the pecuniary interest of the United States to have the individual defendant retained in the case as a joint tort-feasor so that, if there is determined to be joint liability there will be the right of contribution between the joint defendants where it exists in accordance with the local law. In Maryland the statute does so provide for contribution between joint tort-feasors. Md.Code 1943 Supp. Art. 50, §§ 21–30. And counsel for the United States contends that the Act as a whole should not be construed to restrict the jurisdiction of the court to cases where the United States alone is the defendant. Particularly it is pointed out that the expressly granted jurisdiction, by § 410(a), is "To hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred.* Subject to the provisions of this title, the United States shall be liable in respect of such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, except that the United States shall not be liable for interest prior to judgment, or for punitive damages. Costs shall be allowed in all courts to the successful claimant to the same extent as if the United States were a private litigant, except that such costs shall not include attorneys' fees." (Italics supplied.)

Attention is also called to section 411 providing that in such actions the practice and procedure shall be in accordance with the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Counsel for both sides agree that there is an absence of any helpful legislative history for the construction and application of the Act.

After careful consideration of the whole Act I do not find any express language, or implication from the subject matter, sufficient to indicate that it was the intention of Congress to restrict suits against the United States to cases where it alone is sued, thus excluding the possible advantage to the United States of the inclusion of other defendants as alleged joint tort-

feasors. The contrary seems to me to follow from the express provision that the United States may be sued under circumstances where *if a private person,* would be liable to the plaintiff for damages, in accordance with the law of the place where the act or omission occurred. And I do not think the supposed difficulties in administration with respect to possible separate determinations by court and jury, and the provision as to limitations of fees, furnish any substantial or insuperable obstacles with respect to the inclusion of individual defendants as joint tort-feasors. Possibly the anticipated difficulties may require special and further consideration in the course of the actual administration of the Act, but they are not of such· fundamental importance that they would warrant at this time granting the motion to dismiss the individual defendant from the case.

The presently important question is the construction of the Act. The most pertinent judicial decision is United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058, in which it was held that, under the Tucker Act, 28 U.S.C.A. § 41(20), a suit could not be maintained in the district court against the United States and another defendant jointly, because under that Act the jurisdiction of the district court was only *concurrent* with the Court of Claims, and with the limitation of $10,-000 as the amount of recovery. As the Court of Claims had no jurisdiction over the defendants other than the United States it necessary resulted that the district court given only concurrent jurisdiction with that of the Court of Claims likewise had no such jurisdiction over other defendants in such suits.

But I conclude after careful consideration of the Sherwood case that its reasoning is not applicable to suits under the recent Federal Tort Claims Act which has a vary different history and was intended to apply to quite different situations. The jurisdiction of the Court of Claims is exercised without a jury because the nature of the claims there adjudicated are not within the scope of the 7th Amendment respecting jury trials. The jurisdiction so granted to it is necessarily subject to such limitations as are imposed by Congress for the fundamental reason that the United States as an incident of sovereignty is not sueable at all except by its own consent. Because the Court of Claims has no power to function with a jury, while individual defendants have the constitutional right to a jury trial, it necessarily follows that the Court of Claims can have no jurisdiction over individual defendants, and it results that, as the jurisdiction of the district courts under the Tucker Act is only *concurrent* with the Court of Claims, the district courts under the Tucker Act likewise can have no jurisdiction in a suit against the United States jointly with other defendants. And it may be noted that in the Sherwood case there were still other objections to the inclusion of the individual defendant joined with the United States in the suit, which do not exist in the instant case.

The jurisdiction conferred in the Federal Tort Claims Act is more similar or analogous to that conferred by the Suits in Admiralty Act, 46 U.S.C.A. §§ 742, than the jurisdiction under the Tucker Act. The language conferring the jurisdiction in the Admiralty Act reads: "In cases where if such vessel were privately owned or operated * * * a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States * * * provided that such vessel is employed as a merchant vessel * * *."

The language used in the Tort Claims Act as well as the subject matter dealt with, is strikingly similar in effect. Both Acts clearly indicate that it was the intention of Congress to waive its sovereign immunity from suit; and to permit the maintenance in the district court of suits against the United States in cases where there would be liability on individuals in like circumstances. Although I have failed to find any decided cases in which it has been specifically held after consideration that other defendants than the United States may be sued under the Suits in Admiralty Act, there have been numerous cases in which such situations have occurred without contest. It has been almost common

practice in recent years in this court to join in a suit against the United States under the Suits in Admiralty Act, the maritime company or agency operating a merchant vessel under contract with the United States. And see The Cotati, D.C., 2 F.2d 394; The Peerless, D.C., 2 F.2d 395, and W. P. Tanner-Gross & Co. v. Elwell & Co., D.C., 2 F.2d 396; Hidalgo Steel Co. v. Moore & McCormack Co., D.C., 298 F. 331, where it was held under Admiralty Rule 56, 28 U.S.C.A. following section 723, that the United States could be impleaded by the respondent in admiralty suits after the enactment of the Suits in Admiralty Act of 1920. See also Brady v. Roosevelt S. S. Co., 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471; Hust v. Moore-McCormack Lines, 66 S.Ct. 1218; and The Everett Fowler, 2 Cir., 151 F.2d 662.

■ Furthermore while it is true, as pointed out by the Supreme Court in the Sherwood case, that the Federal Rules of Civil Procedure enacted long after the passage of the Tucker Act, could not extend the jurisdiction of the district courts under that Act, nevertheless it would seem to be quite pertinent here that section 411 of the Federal Tort Claims Act does expressly provide that the procedure in suits under the Act shall be in accordance with the Federal Rules of Civil Procedure, one important object of which was to expedite the final determination of litigation by inclusion in one suit of parties directly interested therein despite technical objections to such joinders previously existing in many situations.

And finally it may be observed that while the United States cannot be bound by the consent to the present proceeding by the United States Attorney if there is absence of such consent in the Act itself, nevertheless the consent of the United States Attorney at least is indication that the Executive Department of the Government does not consider the scope of the Act restricted to suits against the United States alone.

■ In considering the intention of Congress with respect to the scope of the Tort Claims Act it is at least relevant to bear in mind the practical aspects of cases likely to arise under the Act. Section 421 expressly excepts from the operation of the statute numerous different classes of torts. But there is no exception made with respect to torts generally for which the United States may be liable as a joint tort-feasor, and no exception with respect to suits for damages resulting from the operation of a motor vehicle driven by an agent of the United States acting within the scope of his authority, which is the type of tort suit here involved. It is well known that a very large percentage of all tort suits presently litigated in the common-law courts of the States arise from automobile operation; and it is not an unusual feature of such suits that two or more defendants are sued as joint tort-feasors. In view of the many classes of torts which are expressly excepted from the scope of the Act it is quite likely that a substantial percentage of suits now and hereafter litigated in the district courts will be based on the alleged negligent operation of motor vehicles by a federal agent, and where such suits also involve automobile collisions it seems probable that there will be many cases arising where the plaintiff alleges negligence on the part of a joint tort-feasor. If under the Act the United States alone is sueable in cases where it is only one of several joint tort-feasors, that will result in disadvantage to the government as it is likely thereby to be deprived of the benefit of contribution from the other participants in the joint negligence contributing to the damages. In view of the nature of the subject matter it seems unreasonable to conclude that Congress intentionally restricted the Act to suits against the United States alone.

■ Nor is there any insuperable objection to the inclusion as a defendant of an individual because in the trial of the case the latter may demand a jury trial. Such a demand in fact may not be made. Frequently defendants in these automobile negligence cases prefer a court to a jury trial, and there would seem to be possibly special reasons, arising from the procedural features of the case, which may determine counsel for the defendant not to demand a jury trial. But however,

that may be, instances have not been wanting in the past, both before and after the new civil procedure rules, in which cases against joint defendants have been tried at one time although the verdict must be separately announced by the judge and by the jury as to the respective defendants. Dellefield v. Blockdel Realty Co., D.C., 1 F.R.D. 689; Elkins v. Nobel, D.C., 1 F.R.D. 357; Munkacsy v. Warner Bros. Pictures, D.C., 2 F.R.D. 380; Mealy v. Fidelity Nat. Bank, D.C., 2 F.R.D. 339; Ford v. Wilson & Co., D.C., 30 F.Supp. 163; Ryan Distributing Corp. v. Caley, D.C., 51 F.Supp. 377. And there is flexibility in procedure with respect to that and similar matters afforded by the civil procedure rules. See Rules 38 and 39 as to jury trials. By Rule 42(b) the court may if seemingly necessary order separate trials. And if this is done possible difficulties with respect to the admissibility of evidence, proper as to one of the parties but not as to the other, could be avoided. However, it is not meant to imply that there must necessarily be separate trials in this particular case. In a suit of the character here presented it is not likely that there will be available evidence against one of the defendants not admissible against the other. And if unexpectedly there should be such evidence offered, it will be time enough to deal with the question when it arises.

There is still another consideration affecting the principal question here involved. The plaintiff and the individual defendant are citizens of different States. If, as is more likely to occur in this class of cases, the plaintiff and the individual defendant had been citizens of the same State, another and perhaps more difficult question of jurisdiction would have existed.

As it is, there is no doubt that the plaintiff can sue the individual defendant singly in one suit and the United States in another suit. And by civil procedure rule 42(a) applicable to both such suits, they could be consolidated for trial as they apparently involve a common question of law or fact. And if it later appears that a single trial would entail inconvenience or prejudice, the court may order a separate trial of the several issues. I have not overlooked the possibility, in the event of separate verdicts by the judge and jury, that the plaintiff may obtain verdicts against each defendant but in different amounts of damages. But this possibility is not peculiar to one trial of the whole case because it would exist if there were separate trials in the one case or in two separate cases against the respective defendants. We are not presently concerned with the rights of the defendants between themselves with respect to contribution in that event. But probably final adjudication of such a question, if it arises, would be facilitated by dealing with separate judgments in the one case rather than in two separate cases. See the interesting discussion as to contribution among joint tort-feasors in various situations in Wisc. Law Review, 1938, pp. 365, 393.

Furthermore if the plaintiff had sued the United States alone it seems likely, as I understand is the contention of counsel for the United States in this case, that it could have impleaded the individual defendant under the third party practice provided for in rule 14.

For all these reasons, I conclude that the motion to dismiss the case as to Jane D. Quillen, the individual defendant, must be and it is hereby overruled.